IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2021 JUN 25 P 3:58
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

**JENNIFER BROWN, Administratrix for the Estate of Larry Brown, deceased,**

**Plaintiff,**

**v.**

**JEFFERSON S. DUNN, Alabama Prison Commissioner; PATRICIA JONES, Warden of Bullock Correctional Facility; and DAVID LAMAR, Warden of Bullock Correctional Facility; each named in his/her individual capacity,**

**Defendants.**

**CASE NO.** 2:21-CV-440

## COMPLAINT

COMES the Plaintiff, Jennifer Brown, as Administratrix of the Estate of Larry Brown, deceased, by and through her attorneys, and files the following Complaint against each of the named Defendants: Jefferson S. Dunn, Patrice Jones, and David Lamar, each in his/her individual capacity.

## I. JURISDICTION AND VENUE

1. Plaintiff Jennifer Brown, the administratrix of the estate of Larry Brown, deceased, brings this action against the named Defendants for the violation of the Eighth and Fourteenth Amendment rights of Larry Brown, deceased, for failing to prevent prisoner-on-prisoner violence and failing to provide safe conditions of confinement. Each named Defendant has supervisory authority of

the correctional officers (such as sergeants, lieutenants, captains, wardens), correctional officers, basic correctional officers, and cube correctional officers.

2. Plaintiff institutes these proceedings and invokes the jurisdiction of this Court pursuant to 42 U.S.C §1983, et. seq. to assert claims and recover damages for violations of the Eighth Amendment and Fourteenth Amendment to the U.S. Constitution by Defendants Jefferson S. Dunn, Patrice Jones, and David Lamar, while acting under color of state law, and while Larry Brown, deceased, was incarcerated as the Bullock Correctional Facility.

3. These constitutional violations and claims brought pursuant to 42 U.S.C §1983 arise from each Defendant's deliberate indifference for failing to prevent prisoner-on-prisoner violence and for failing to provide safe conditions of confinement resulting in injuries and the death of Larry Brown, deceased. The Plaintiff also files a pendant state law claims arising therefrom.

4. This Court has original jurisdiction of this civil action pursuant to 42 U.S.C. §1331 and 42 U.S.C. §1334(a)(3)-(4) as the Plaintiff asserts claims arising under the laws of the United States, including 42 U.S.C §1983 and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367, as this claim is so related to the Plaintiff's federal claims that it forms a part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in the Northern Division of the Middle District of Alabama under 28 U.S.C. § 1391(b) because all the Defendants reside in this district and the alleged incidents, events, actions and occurrences giving rise to the these causes of action occurred in the Middle District of Alabama.

## II. PARTIES

6. The named Plaintiff, Jennifer Brown (hereinafter "Plaintiff or "Ms. Brown") is a citizen of the United States and is the lawful administratrix of the deceased, Larry Brown. At the time of his death, Larry Brown, deceased, was a citizen of the United States. Plaintiff is over the age of nineteen years.

7. The Defendant, Jefferson S. Dunn, (hereinafter "Mr. Dunn") is the Alabama Prison Commissioner, and is named only in his individual capacity. Under Alabama law, Mr. Dunn is entrusted with the proper operation and management of the Alabama Prison System, including the Bullock Correctional Facility. These responsibilities include, but are not limited to, the protection of inmates, the prevention of prisoner-on-prisoner violence, the obligation to provide safe conditions of confinement, and the supervision and management of jail employees, including those employed at the Bullock Correctional Facility. Mr. Dunn participated in the alleged actions while acting under color of law and within the line and scope of his duties.

8. The Defendant, Patrice Jones, is a Correctional Warden at the Bullock Correctional Facility, and is named only in her individual capacity. Under Alabama law, Ms. Jones is entrusted with the proper operation and management of the Bullock Correctional Facility. These responsibilities include, but are not limited to, the protection of inmates, the prevention of prisoner-on-prisoner violence, the obligation to provide safe conditions of confinement, and the supervision and management of jail employees, including those employed at the Bullock Correctional Facility. Ms. Jones participated in the alleged actions while acting under color of law and within the line and scope of his duties.

9. The Defendant, David Lamar, is a Correctional Warden at the Bullock Correctional Facility, and is named only in his individual capacity. Under Alabama law, Mr. Lamar is entrusted

with the proper operation and management of the Bullock Correctional Facility. These responsibilities include, but are not limited to, the protection of inmates, the prevention of prisoner-on-prisoner violence, the obligation to provide safe conditions of confinement, and the supervision and management of jail employees, including those employed at the Bullock Correctional Facility. Mr. Lamar participated in the alleged actions while acting under color of law and within the line and scope of his duties.

10. Defendant Guard(s) are unidentified and unnamed guards employed by the Alabama Department of Corrections at the Bullock Correctional Facility, and who participated in the wrongful conduct asserted in each count of Plaintiff's Complaint. The Plaintiff reserves the right to amend this Complaint and name such unidentified guard(s) at a later time when so identified.

## III. BACKGROUND

11. On April 2, 2019, the United States, through the U.S. Department of Justice's Civil Rights Division and the three U.S. Attorney's Offices for the State of Alabama, notified the State of Alabama and each of the named defendants of its findings that, in violation of the Constitution, prisoners housed in Alabama's Prisons for Men, including the Bullock Correctional Facility, are at serious risk of death, physical violence, and abuse at the hands of other prisoners.

12. Each of named Defendants have failed or refused to correct the unconstitutional conditions at Bullock Correctional Facility as identified by the United States in its April 2019 and July 2020 findings reports.

13. Since the United States notified the State of its findings, Alabama's Prisons for Men, including the Bullock Correctional Facility, remained extremely overcrowded, prisoner-on-prisoner homicides have increased, prisoner-on-prisoner violence has continued unabated, the physical

facilities have remained inadequate, use of excessive force by security staff has remained common, and staffing rates have remained critically and dangerously low.

14. In the two years following the United States' original notification to the Defendant of the unconstitutional conditions of confinement, prisoners at Alabama's Prisons for Men, including Bullock Correctional Facility, have continued daily to endure a substantial risk of serious harm, including death, physical violence, and sexual abuse at the hands of other prisoners.

15. The unconstitutional conditions are pervasive and systemic across Alabama's Prisons for Men, including the Bullock Correctional Facility, as indicated by documented data and examples of violence, sexual abuse, excessive force, and unsafe and unsanitary conditions.

16. The Defendants are deliberately indifferent to these serious and systemic constitutional problems present in Alabama's Prisons for Men, including the Bullock Correctional Facility.

17. Beginning after the April 2019 findings report and continuing after the July 2020 findings report, the United States engaged in multiple rounds of negotiations with the State, including Mr. Dunn. Thereafter, the United States determined that constitutional compliance cannot be secured by voluntary means, and judicial action became necessary to remedy the violations of law identified in the United States' findings reports and to vindicate the rights of the individuals incarcerated in Alabama's Prisons for Men, including the Bullock Correctional Facility.

18. On December 9, 2020, the United States filed suit against the State of Alabama and the Alabama Department of Corrections in the United States District Court for the Northern District of Alabama (Case 2:20-cv-01971-JHE; and on May 19, 2021, the United States filed its Amended Complaint.

19. The Bullock Correctional Facility is a medium-security, or Security Level IV, prison for men in Union Springs, Alabama with a designed capacity of approximately 919 men.

20. In 2016, the United States notified the Defendants that it had opened an investigation into whether the conditions in Alabama's correctional facilities for men, including the Bullock Correctional Facility, violated the Eighth Amendment of the United States Constitution.

21. The United States investigated whether Mr. Dunn and others (1) adequately protect prisoners from physical harm and sexual abuse at the hands of other prisoners; (2) adequately protect prisoners from use of excessive force and sexual abuse by security staff; and (3) provide prisoners with sanitary, secure, and safe living conditions.

22. In April 2019, the United States notified the named Defendants that the United States had reasonable cause to believe that the Defendants were violating the Eighth Amendment rights of prisoners housed in Alabama's correctional facilities, including the Bullock Correctional Facility, by failing to protect prisoners from physical harm and sexual abuse at the hands of other prisoners and by failing to provide safe conditions.

23. In July 2020, the United States notified the named Defendants that the United States had reasonable cause to believe that Defendants were violating the Eighth Amendment by also failing to protect prisoners from excessive force by staff. The United States' findings were outlined in its April 2019 and July 2020 findings reports.

24. The Defendants have failed to protect prisoners in Alabama's Prisons for Men, including the Bullock Correctional Facility, from serious harm and a substantial risk of serious harm at the hands of other prisoners, including serious injury and death.

25. There have been dozens of homicides across Alabama's Prisons for Men, including the Bullock Correctional Facility, in the last several years. The United State provided each of the

Defendants with information illustrating the number of prisoner-on-prisoner homicides by facility, as reported by the Alabama Department of Corrections (hereinafter "ADOC").

26. The pattern of violence at Alabama's Prisons for Men, including the Bullock Correctional Facility, is pervasive and systemic information demonstrates that the unconstitutional conditions identified during the investigation continue.

27. In calendar year 2018, at least ten men were killed by other prisoners in Alabama's Prisons for Men.

28. In 2018, the homicide rate in Alabama's Prisons for Men was more than seven times the national average for prisons.

29. ADOC reports homicides by fiscal year. According to ADOC's publicly available data for Fiscal Year 2019, from October 2018 through September 2019, at least 11 prisoners were killed by other prisoners.

30. In Fiscal Year 2020, at least 16 prisoners were killed by other prisoners according to ADOC's publicly available data. This includes the following: in December 2019, a 31-year-old prisoner at Bibb died after being assaulted by another prisoner; in March 2019, at Bibb, two prisoners were killed by other prisoners in two separate incidents in the span of three days; in June 2020, a 67-year-old prisoner was beaten to death by another prisoner at Bullock Correctional Facility; in May 2020, a 33-year-old prisoner died after being assaulted by another prisoner at Elmore; in May 2021, a 23-year-old prisoner was stabbed to death by another prisoner at Fountain. The victim was due to be released the next day; in September 2020, a 46-year-old prisoner at Fountain was stabbed to death by another prisoner in an open dormitory; in June 2019, a 52-year-old prisoner at Staton was discovered with stab wounds only after he had been stabbed multiple times in an open dormitory by another prisoner. He was airlifted to an outside hospital where he later died; in April 2020, a 43-year-old

prisoner was stabbed to death by another prisoner at Ventress; in October 2019, a 52-year-old prisoner at Ventress died after being stabbed through the eye by another prisoner.

31. Over the last several years, Alabama's Prisons for Men have become even more deadly. The United States has provided the named Defendants with the trends in prisoner-on-prisoner homicides within all of Alabama's Prisons for Men from Fiscal Years 2015 to 2020.

32. ADOC's reports do not reflect all deaths from prisoner-on-prisoner homicides. For example, in November 2020, a 48-year-old prisoner at Bullock was beaten and stabbed to death. Additionally, in February 2021, a 38-year-old prisoner at St. Clair was stabbed to death in an open dormitory.

33. The named Defendants do not accurately classify or identify the cause of every prisoner death. By way of example, in February 2018, a prisoner at Kilby died from multiple stab wounds to his head, abdomen, back, and arm. The Defendants classified the prisoner's death as "Natural" rather than "Homicide." Similarly, in November 2017, an autopsy revealed a prisoner at Elmore died from blunt force trauma to the head. The Defendants classified the death as "Natural."

34. According to the DOJ, the Defendants have publicly reported at least 159 prisoner deaths for Fiscal Year 2020 and 75 prisoner deaths in the first five months of Fiscal Year 2021. However, the Defendants have not identified the causes of some of these deaths. Further, the Defendants fail to report a death while it is under investigation, a status which sometimes continues for years.

35. The number of prisoner-on-prisoner assaults within Alabama's Prisons for Men, including the Bullock Correctional Facility, consistently has been high in recent years as demonstrated by the DOJ.

36. According to the DOJ, from October 2018 to September 2019 (Fiscal Year 2019), approximately 278 prisoners in Alabama's Prisons for Men suffered serious injuries, defined as injuries requiring transport to outside hospitals, as the result of prisoner-on-prisoner assaults as detailed by the DOJ.

37. In October 2019, the Defendants stopped publicly reporting separate numbers each month for serious injuries caused by prisoner-on-prisoner violence.

38. According to the DOJ and publicly available data, there were over 1,100 prisoner-on-prisoner assaults in Alabama's Prisons for Men from October 2019 through September 2020 (Fiscal Year 2020).

39. In the most recent Fiscal Year (FY 2020), each of Alabama's Prisons for Men has seen significant numbers of reported assaults as demonstrated by the DOJ.

40. During the first five months of Fiscal Year 2021, there have been 376 reported assaults and 453 reported fights across Alabama's Prisons for Men.

41. The Defendants, through their acts and omissions, have failed to provide adequate supervision of prisoners housed within Alabama's Prisons for Men, including the Bullock Correctional Facility to prevent such violence.

42. One factor contributing to the violence is overcrowding in Alabama's Prisons for Men. Alabama's Prisons for Men were designed to hold approximately 9,735 men. However, according to the February 2021 Monthly Statistical Report, ADOC reported that Alabama's Prisons for Men housed approximately 14,000 prisoners.

43. According to the DOJ, Alabama's Prisons for Men, with the exception of Holman, house a substantial number of men beyond their design capacity. For example, Staton had a 257% occupancy rate and Kilby had a 201% occupancy rate at the end of February 2021. Bibb, Bullock,

Donaldson, Easterling, and Ventress all had occupancy rates over 140%. Even Holman had a 282% occupancy rate on its death row.

44. The overcrowding at Alabama's Prisons for Men will be made worse when restrictions on admission related to COVID-19 are eliminated. In February 2021, ADOC reported that there were thousands of prisoners at local county jails awaiting intake into ADOC custody, in part due to the COVID-19 restrictions.

45. Another factor contributing to the violence is the dangerously low level of security staffing. A recent court order confirmed the Defendants continue to have fewer than half its staff positions filled. As of the third quarter of 2020, ADOC had filled 1,322 of 3,326 positions for correctional officers. The overall number of supervisors has decreased. Seven of Alabama's Prisons for Men have total staff vacancy rates in excess of 50%, and all have at least 25% of staff positions vacant. Vacancy rates at some facilities are even higher. The Bullock Correctional Facility has a vacancy rate of 60.1%.

46. The Defendants, through their acts and omissions, have engaged in a pattern or practice that obscures the level of harm from prisoner violence in Alabama's Prisons for Men, including the Bullock Correctional Facility. For example, (a) the Defendants do not consistently, reliably, or accurately classify the causes of deaths that occur within Alabama's Prisons for Men, including the Bullock Correctional Facility; (b) the Defendants have classified prisoners' deaths as occurring by "natural causes" when the death is caused by prisoner-on-prisoner violence; (c) the Defendants do not have a centralized system to track or review prisoner mortalities within Alabama's Prisons for Men, nor do the Defendants maintain a unified repository or database for prisoner autopsies to track and identify patterns in causes of death.

47. The Defendants, through their acts and omissions, fail to protect prisoners at the Bullock Correctional Facility from homicide even when the Defendants have advance warning that certain prisoners are in danger from violence at the hands of other prisoners.

48. The Defendants, through their acts and omissions, fail to supervise prisoners in custody at the Bullock Correctional Facility properly, which results in a failure to prevent serious injuries to prisoners. Because of Defendants' failure to supervise prisoners, there is a delay in security staff discovering life-threatening injuries to prisoners.

49. The Defendants, through their acts and omissions, fail to screen entrants to the Bullock Correctional Facility for contraband adequately and fail to prevent the introduction of illegal contraband into the Bullock Correctional Facility as demonstrated by the DOJ. "Contraband" refers to prohibited materials that can reasonably be expected to cause physical injury or adversely affect the security, safety, or good order of Alabama's Prisons for Men, including drugs, cell phones, and weapons.

50. The failure to prevent the introduction of illegal contraband leads to prisoner-on-prisoner violence. For example, the use of illicit substances, including methamphetamines or Fentanyl and synthetic cannabinoids, is prevalent in Alabama's Prisons for Men. Prisoners using illicit substances often harm others or become indebted to other prisoners. The inability to pay drug debts leads to beatings, kidnappings, stabbings, sexual abuse, and homicides.

51. The Defendants' failure to prevent the introduction of illicit substances leads to deaths by overdose.

52. The Defendants, through their acts and omission, also fail to prevent the introduction of illicit cell phones within Alabama's Prisons for Men, including the Bullock Correctional Facility. The possession and use of cell phones are widespread throughout Alabama's Prisons for Men and

contributes to the high rate of violence in the prisons. For example, cell phones are used by prisoners to coordinate the introduction of illicit substances into Alabama's Prisons for Men, including the Bullock Correctional Facility, and for the extortion of prisoner family members by other prisoners.

53. The Defendants, through their acts and omissions, fail to control effectively the introduction, manufacture, and use of weapons within Alabama's Prisons for Men, including the Bullock Correctional Facility. Possession and use of weapons are widespread within Alabama's Prisons for Men, including the Bullock Correctional Facility. The large number of weapons contributes to the high rate of violence, sexual abuse, and death.

54. The Defendants, through their acts and omissions, fail to respond properly to prisoner and staff reports of threats and violence so that management can appropriately discipline assailants and avert future violence. For example, in February 2018, a prisoner was killed by another prisoner at Bullock—one day after the prisoner who was killed expressed concern for his safety to prison officials.

55. The Defendants, through their acts and omissions, discourage victims from reporting incidents of violence or threats of violence including through their failure to establish a grievance system in Alabama's Prisons for Men, their retaliation against prisoners who report violence and threats of violence, and their imposition of discipline against prisoners who report violence or refuse to name individuals they fear may harm them.

56. The Defendants, through their acts and omissions, fail to prevent prisoners from extorting other prisoners and their family members, resulting in serious physical injuries and sexual abuse and presenting a risk of serious harm to prisoners at Alabama's Prisons for Men, including the Bullock Correctional Facility. For example, prisoners have been "kidnapped" by other prisoners and

forcibly held, against their will, for multiple days while prisoner-captors extorted the hostage-prisoner's family and friends.

57. The Defendants and their staff have failed to intervene when alerted to potential extortion.

58. The Defendants, through their acts and omissions, fail to implement effective classification and housing policies, thereby resulting in violence caused by commingling prisoners who should be kept separate.

59. The Defendants, through their acts and omissions, fail to prevent uncontrolled movement of prisoners, leading to prisoners roaming in unauthorized or unsupervised areas and leading to violence. There were over 1,100 reports of prisoners being in unauthorized locations across Alabama's Prisons for Men in ADOC's 2017 incident report database.

60. The Defendants, through their acts and omissions, fail to provide adequate programming, education, or work opportunities. The majority of prisoners receive no programming or employment. This idle time combined with lack of adequate supervision of prisoners results in increased opportunities to perpetuate violence.

61. The incidents summarized below are illustrative examples of the pervasive pattern of life-threatening violence within Alabama's Prisons for Men and are not a comprehensive list of all relevant violent incidents that have occurred within Alabama's Prisons for Men:

(a) in May 2018, a prisoner at Bibb reported that he had been held hostage in an open dormitory over the course of several days over a money debt and was severely beaten by several prisoners during that time;

(b) in October 2017, a prisoner at Bibb entered the health care unit bleeding from stab, bite, and scratch wounds. Because the prisoner declined to name the person who had assaulted him, he was disciplined for intentionally creating a security/safety/health hazard;

(c) in April 2017, a Bibb prisoner was stabbed multiple times by another prisoner while sleeping. His attacker stated that the victim owed him a drug debt, so he "got it in blood;"

(d) in April 2018, a Bullock prisoner, covered in blood, approached security staff and stated that he had been stabbed by several other prisoners. He had to be airlifted to an outside hospital for treatment;

(e) in September 2017, a prisoner at Draper who was high on Suboxone assaulted another prisoner with a lock tied to a string. While drugged, the attacker also was stabbed, had bleach poured on him, and was beaten with a broken mop handle;

(f) in February 2021, a prisoner at Easterling was stabbed multiple times by two other prisoners in the head, neck, and shoulders. The prisoner was airlifted to an outside hospital for treatment; in August 2020, a prisoner at Easterling was taken to an outside hospital with serious burn wounds when another prisoner microwaved a mixture of baby oil, shaving powder, and coffee granules and poured it on the victim's face and body while he was sleeping;

(g) in March 2018, a prisoner at Elmore reported that he was in fear for his life because he owed money to four prisoners who were threatening him. The reporting prisoner was ordered to provide a urine sample and disciplined for intentionally creating a security/safety/health hazard;

(h) in February 2017, a prisoner at Elmore died after being beaten to death by another prisoner over a failed drug transaction;

(i) in February 2018, a Fountain prisoner was stabbed ten times over his entire body by another prisoner before being discovered by an officer. He was airlifted to an outside hospital. A search recovered a homemade weapon that was approximately nine inches long;

(j) in February 2018, a Holman officer noticed a prisoner walking toward the front gate of his open dormitory with blood on his clothes. He had been stabbed 22 times by two other prisoners, with wounds to his back and head, and had to be airlifted to an outside hospital;

(k) in April 2018, an officer at Kilby noticed a crowd of prisoners gathered in the back of an open dormitory. When the officer approached, he discovered a prisoner with a bleeding, partially detached ear. The injured prisoner had been fighting with another prisoner who tried to bite off his ear. The injured prisoner was ultimately taken to an outside hospital for treatment;

(l) in March 2018, a prisoner at Kilby approached an officer with visible burns on his body. The prisoner told the officer another prisoner had thrown shaving cream heated in a microwave on him; the shaving cream was hot enough to cause second degree chemical burns. The prisoner was taken to an outside emergency room;

(m) in December 2020, an inmate was stabbed multiple times by another prisoner in the early morning hours at Limestone and had to be transported to an outside hospital for treatment;

(n) in August 2020, four prisoners at Limestone were involved in a knife fight that resulted in three being transported to an outside hospital for treatment;

(o) in April 2018, at St. Clair, a captain was told that a prisoner feared for his safety because of debts he owed to gang members. The prisoner who made the report was disciplined for intentionally creating a security/safety/health hazard and placed in restricted housing for admitting to having accrued a debt;

(p) in February 2018, an officer at St. Clair noted a prisoner running down the hallway and stopped him. The prisoner turned and showed the officer that he had an eight-inch, metal homemade knife embedded in his head;

(q) in February 2018, a prisoner at St. Clair was repeatedly physically and sexually assaulted at night by his cell mate. He eventually reported that his cell mate had been extorting him to pay $1,000 and was forcing him into sex and requiring payment of four packs of tobacco each day until he satisfied the $1,000 debt;

(r) in January 2018, the mother of a prisoner at Ventress reported that she and her son were being extorted for money to pay off an alleged $600 debt to another prisoner. The prisoner's mother was texted photos of a prisoner's genitals from a cell phone. Through texts, the extorting prisoner threatened to chop her son into pieces and rape him if she did not send $800.

62. The Defendants' pattern or practice of failing to protect prisoners from violence at the hands of other prisoners will continue.

63. Insufficient staffing in Alabama's Prisons for Men, including the Bullock Correctional Facility, leads to inadequate supervision, which in turn allows prisoner-on-prisoner violence and sexual abuse to occur.

64. The Defendants, through their acts and omissions, discourage reporting of prisoner-on-prisoner violence and sexual abuse.

65. The Defendants, through their acts and omissions, fail to prevent prisoners from being violently abused by other prisoners in retaliation for reporting violence or abuse.

66. For example, in January 2018, a prisoner at Bullock Correctional Facility resorted to cutting his wrist after an attempted sexual assault and physical assault by another prisoner "because he feared being in population and needed to be placed in a single cell." He reported that two nights prior,

two prisoners had attempted to rape him but were unable to penetrate him because he defecated during the assault. The prisoners then poured hot water on him, causing burn marks to his buttocks and the back of his head. ADOC placed the victim in segregation and allowed the perpetrators to remain in general population. The incident report notes that the perpetrators would receive "disciplinary actions for assault," and that no further action would be taken.

67. The Defendants also fail to provide safe and sanitary conditions for prisoners in Alabama's Prisons for Men, including the Bullock Correctional Facility.

68. Understaffing, coupled with the lack of adequate surveillance cameras, exacerbates the serious risk of death, physical violence, and sexual abuse at the hands of other prisoners in Alabama's Prisons for Men, including the Bullock Correctional Facility.

69. Understaffing, coupled with broken and defective locks, allows prisoners to leave secure areas, obtain contraband, and improperly associate with or assault other prisoners.

70. Overcrowding, coupled with the lack of adequate working toilet and shower fixtures, heightens tensions within Alabama's Prisons for Men, including the Bullock Correctional Facility, which results in prisoner-on- prisoner violence.

71. The Defendants, through their acts and omissions, allow for significant physical plant-related issues in Alabama's Prisons for Men, including the Bullock Correctional Facility, that contribute to violence, including broken or defective locks, insufficient or nonfunctional surveillance cameras, and insufficient convex mirrors.

72. The Defendants are aware of their failure to protect prisoners in Alabama's Prisons for Men, including the Bullock Correctional Facility, from prisoner-on-prisoner violence, prisoner-on-prisoner sexual abuse, security staffs' excessive use of force, and unsafe and unsanitary conditions.

73. Defendants have been aware of the dangerous conditions in Alabama's Prisons for Men, including the Bullock Correctional Facility, for many years,

74. Since the United States opened its investigation in October 2016, Alabama's Prisons for Men, including the Bullock Correctional Facility, have remained extremely overcrowded.

75. Alabama's Prisons for Men, including the Bullock Correctional Facility, are still critically and dangerously understaffed.

76. Since the United States released its findings report on April 2, 2019, notifying the State and the Defendants that they were violating the Eighth Amendment by failing to prevent prisoner-on-prisoner violence and sexual abuse, violence and sexual abuse have remained widespread. Injuries, deaths, and fighting are systemic problems in Alabama's Prisons for Men, including the Bullock Correctional Facility.

77. Since the United States released its findings report on July 23, 2020, notifying the State that it was violating the Eighth Amendment through a pattern of excessive force in Alabama's Prisons for Men, the pattern of excessive force has continued.

78. Despite being on notice of the dangerous and deficient conditions in Alabama's Prisons for Men, the Defendants have failed or refused to eliminate the unconstitutional conditions.

## IV. FACTS OF LARRY BROWN'S DEATH

79. The allegations of Paragraphs 10 through 77 are hereby re-alleged and incorporated by reference.

80. For approximately nine (9) years, Larry Brown, deceased, (hereinafter referred to as "Mr. Brown") was incarcerated in the Bullock Correctional Facility.

81. At all times relevant to this Defendants Dunn, Jones and Lamar entrusted with the proper operation and management of the Bullock Correctional Facility. These responsibilities

included the protection of inmates, the prevention of prisoner-on-prisoner violence, the obligation to provide safe conditions of confinement, and the supervision and management of jail employees, including those employed at the Bullock Correctional Facility.

82. It is well settled that prison officials must "take reasonable measures to guarantee the safety of the inmates," and "[a] prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if [the official] is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury." See *Marbury v. Warden*, 936 F.3d 1227 (11th Cir. 2019); *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016).

83. At the Bullock Correctional Facility, there existed a substantial risk of serious harm—and the violent conditions were both extreme and posed an unreasonable risk of serious injury to the inmates' future health or safety, including the future health and safety of Mr. Brown.

84. At the Bullock Correctional Facility, the named Defendants were deliberately indifferent to this unreasonable risk. Each named Defendant was aware of many facts from which the inference could be drawn, and did draw the inference, that a substantial risk of serious harm exists.

85. In addition, each named Defendant responded to the known risk in an unreasonable manner, in that each Defendant knew of ways to reduce the harm, but knowingly or recklessly declined to act. Moreover, each Defendant's failure to act reasonably directly resulted in Mr. Brown's serious injuries and death.

86. At the Bullock Facility, violence and terror among prisoners reigned, as serious inmate-on-inmate violence was the norm or something close to it.

87. In addition, at the Bullock Facility, there existed pervasive understaffing and additional logistical issues rendering prison officials unable to address near-constant violence and tensions between prisoners and/or groups of prisoners. This also included risks posed by individual

prisoners or groups of prisoners due to many prisoners' mental illnesses; and included guards, with knowledge and/or consent, permitting repeated inmate-on-inmate threats and violence.

88. At the Bullock Facility, each Defendant possessed significant details about the constant threats of violence among the prisoners, including the specific dangerous inmate actions taken, and threats made, against Mr. Brown. This environment and information provided each Defendant with an understanding that prisoners, including Mr. Brown, suffered each day from a strong likelihood of injury or death. Each Defendant had been placed on notice of the substantial risk of serious harm to Mr. Brown. This risk was substantial and not merely a possibility.

89. On or about January 1, 2021, Mr. Brown and other inmates at the Bullock Facility began providing information to officers at the Bullock Facility that serious deadly threats to Mr. Brown's life were being made by other inmates, including Charles David, Edward Bowman, Charles Anderson, Marcus Washington, Carlos Jackson, Marcus Jackson, "D.J," and "Roach."

90. For approximately four months, from January 2021 until on or about April 1, 2021, Mr. Brown and other inmates at the Bullock Facility repeatedly advised Bullock Facility officers that serious deadly threats to Mr. Brown's life were being made by other inmates, including Charles David, Edward Bowman, Charles Anderson, Marcus Washington, Carlos Jackson, Marcus Jackson, "D.J," and "Roach."

91. Mr. Brown and other inmates not only identified to the officers the inmates, by name, who were threatening a potential deadly attack against Mr. Brown, but effectively placed the Defendants on notice that Mr. Brown faced a specific and substantial risk of serious and/or deadly harm.

92. Through the acts and omissions alleged in paragraphs 10 through 77, and the more specific acts and omission stated in paragraphs 79-90, the Defendants subjected Larry Brown,

deceased, while in the Bullock Correctional Facility, to conditions of confinement that deprived him of his rights, privileges, and immunities secured and protected by the Eighth and Fourteenth Amendments to the Constitution of the United States, causing Mr. Brown, deceased, to suffer grievous harm and resulting death.

93. Through the acts and omissions alleged in paragraphs 10 through 77, and the more specific acts and omission stated in paragraphs 79-90, the Defendants exhibited deliberate indifference to the safety of Larry Brown, deceased, as well as other prisoners located at Bullock Correctional Facility, in violation of the rights, privileges, or immunities of those prisoners as secured or protected by the Eighth and Fourteenth Amendments to the Constitution of the United States.

94. On or about April 2, 2021, and due to each Defendant's deliberate indifference state herein, Larry Brown, deceased, was physically attacked by the prisoners at the Bullock Correctional Facility, whose death threats and identities hade been made known to the named Defendants. This attack resulted in very serious injuries to Mr. Brown, deceased.

95. After suffering the serious physical injures due to each Defendant's deliberate indifference on or about April 2, 2021, Larry Brown, deceased, was transported to the Baptist South Hospital in Montgomery, Alabama.

96 On or about April 2, 2021, due to each Defendant's deliberate indifference, Larry Brown, deceased, died due to the serious known risks and injuries caused by the physical attack of known violent prisoners at the Bullock Correctional Facility.

## V.

## COUNT I

## VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENTS

97. The allegations of Paragraphs 10 through 95 are hereby re-alleged and incorporated by reference.

98. A substantial risk of serious harm caused by violent prisoners existed at the Bullock Correctional Facility, and each named Defendant was subjectively aware of this substantial risk of serious harm to prisoners, including Larry Brown, deceased.

99. With subjective knowledge of the substantial risk of serious harm caused by violent prisoners at the Bullock Correctional Facility, each named Defendant did not respond and/or did not reasonably respond to the risk.

100. Larry Brown, deceased, suffered a substantial risk of serious harm caused by violent prisoners at the Bullock Correctional Facility. The violence of prisoners at the Bullock Correctional Facility was so extreme that it posed an unreasonable risk of serious damage to prisoner health or safety, including the health and safety of Larry Brown, deceased.

101. Each Defendant was well aware of the actual substantial risk of serious harm at the Bullock Correctional Facility, and that there existed a strong likelihood of prisoner injuries, including the serious injuries suffered by Larry Brown, deceased.

102. Each named Defendant acted with deliberate indifference to this substantial risk in violation of the Eighth and Fourteenth Amendments, resulting in the deceased, Larry Brown's, injuries and death.

103. Each named Defendant's deliberate indifference to the actual and substantial risk of serious harm at the Bullock Correctional Facility was unwarranted, unlawful and excessive, and

violated the individual rights afforded Larry Brown, deceased, by the Eighth Amendment and Fourteenth Amendment.

104. Each named Defendant acted with a conscious disregard of the known consequences of their actions and/or omissions; and knew of, or should have known, and failed to prevent the deliberate indifference resulting in the serious injuries and death of Larry Brown, deceased.

105. As a direct and proximate result of each Defendant's unlawful conduct, Larry Brown, deceased, suffered actual physical and emotional injuries and death, and other damages and losses entitling Plaintiff to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, extraordinary pain and suffering, loss of life and emotional distress.

106. Plaintiff is further entitled to attorney's fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.

107. In addition to compensatory, damages, Plaintiff entitled to punitive damages against the Defendants, as their actions were taken maliciously, willfully and with a reckless or wanton disregard of the constitutional rights of Larry Brown, deceased.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests the following relief:

a) Judgment declaring that each named Defendant violated the constitutional rights of the Larry Brown, deceased, as provided by the Eighth Amendment and Fourteenth Amendment;

b) An order granting compensation for rights to which Larry Brown, deceased, would have been entitled, had he not been the victim of the civil rights violations;

c) An award of compensatory damages, including but not limited to damages for personal injury, mental anguish, emotional distress, and medical expenses, to which Plaintiff may be entitled;

d) An award of punitive damages against the Defendants;

e) An award of reasonable attorney's fees as permitted by pursuant to 42 U.S.C. §1988; and

f) An award of all court costs and fees, and such other necessary relief deemed appropriate.

**COUNT II**

**WRONGFUL DEATH**

108. The allegations of Paragraphs 10 through 95 are hereby re-alleged and incorporated by reference.

109. The Plaintiff asserts this claim pursuant to Ala. Code (1975) § 6-5-410.

110. A substantial risk of serious harm caused by violent prisoners existed at the Bullock Correctional Facility, and each named Defendant was subjectively aware of this substantial risk of serious harm to prisoners, including Larry Brown, deceased.

111. With subjective knowledge of the substantial risk of serious harm caused by violent prisoners at the Bullock Correctional Facility, each named Defendant did not respond and/or did not reasonably respond to the risk.

112. Larry Brown, deceased, suffered a substantial risk of serious harm caused by violent prisoners at the Bullock Correctional Facility. The violence of prisoners at the Bullock Correctional Facility was so extreme that it posed an unreasonable risk of serious damage to prisoner health or safety, including the health and safety of Larry Brown, deceased.

113. Each Defendant was well aware of the actual substantial risk of serious harm at the Bullock Correctional Facility, and that there existed a strong likelihood of prisoner injuries, including the serious injuries suffered by Larry Brown, deceased.

114. Each named Defendant acted willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, under a misinterpretation of the law in discharging his or her duties, and/or in disregard of the known consequences of his or her actions and/or omissions; and further knew of, or should have known, and failed to prevent the deliberate indifference resulting in the serious injuries and death of Larry Brown, deceased.

115. As a direct and proximate result of each Defendant's unlawful conduct, Larry Brown, deceased suffered actual physical and emotional injuries and death, and other damages and losses entitling Plaintiff to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, extraordinary pain and suffering, and emotional distress.

116. Each Defendant's acts and/or omissions stated herein caused the wrongful death of Larry Brown, deceased, in violation of Ala. Code (1975) § 6-5-410.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests the following relief:

a) Judgment declaring that each named Defendant's unlawful acts and/or omissions stated herein caused the wrongful death of Larry Brown, deceased;

b) An award of compensatory damages, including but not limited to damages for personal injury, mental anguish, emotional distress, and medical expenses, to which Plaintiff may be entitled;

c) An award of punitive damages against the named Defendants;

e) An award of reasonable attorney's fees; and

f) An award of all court costs and fees, and such other necessary relief deemed appropriate.

## VI. JURY DEMAND

**Plaintiff hereby requests trial by jury on all issues so triable.**

Respectfully submitted this 25th day of June 2021.

Julian L. McPhillips, Jr. (ASB-3744-L74J)
MCPHILLIPS SHINBAUM, LLP
516 S. Perry Street Montgomery, AL 36104
T: (334) 262-1911
F: (334) 263-2321
julianmcphillips@icloud.com
Counsel for Plaintiff

K. David Sawyer (ASB-5793-R61 K)
Of Counsel
MCPHILLIPS SHINBAUM, LLP
516 South Perry Street
Montgomery, AL 36104
T: (334) 356-4301
F: (334) 263-2321
kdsawyer64@outlook.com
Co-counsel for Plaintiff

**OF COUNSEL**
**MCPHILLIPS SHINBAUM, LLP**
516 S. Perry Street Montgomery, AL 36104
T: (334) 262-1911
F: (334) 263-2321
julianmcphillips@icloud.com

**SERVE THE DEFENDANTS AND THE STATE OF ALABAMA ATTORNEY GENERAL**

**BY PERSONAL PROCESS SERVER AT:**

**Jefferson S. Dunn**
c/o Alabama Department of Corrections
301 South Ripley Street
Montgomery, Alabama 36130-1501
(334) 353-3883

**Patrice Jones**
c/o Alabama Department of Corrections
301 South Ripley Street
Montgomery, Alabama 36130-1501
(334) 353-3883

OR

c/o Bullock County Correctional Facility
Highway 82 East
Union Springs, AL 36089

**David Lamar**
c/o Alabama Department of Corrections
301 South Ripley Street
Montgomery, Alabama 36130-1501
(334) 353-3883

OR

c/o Bullock County Correctional Facility
Highway 82 East
Union Springs, AL 36089

**Attorney General Steve Marshall**
Attorney General's Office
State of Alabama
501 Washington Avenue
Montgomery, AL 36104
(334) 242-7300
docketroom@alabamaag.gov

Julian L. McPhillips, Jr. (ASB-3744-L74J)
Counsel for Plaintiff